**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**VICTOR CUEVAS,**

        **Plaintiff,**

 vs.               3:14-cv-00018
                     (MAD)
**CAROLYN W. COLVIN,**
*Commissioner of Social Security*,

        **Defendant.**
_____

**APPEARANCES:**         **OF COUNSEL:**

**LACHMAN & GORTON**      **PETER A. GORTON, ESQ.**
1500 East Main Street
P.O. Box 89
Endicott, New York 13761-0089
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION** **SERGEI ADEN, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

  Plaintiff commenced this action on January 7, 2014, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Victor Cuevas' ("Plaintiff") applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

## II. BACKGROUND

Plaintiff's date of birth is October 26, 1953, which made him 56 years old at the time he protectively filed for SSI and DIB on December 23, 2009. *See* Dkt. No. 9, Administrative Transcript ("T."), at 363-71, 421. Plaintiff's education included the completion of two years of college in 1985. *See id.* at 426. Beginning in 1993, Plaintiff worked full time for one year as a billing coder for a medical company, but then Plaintiff did not have any reported income in the years 1995 through 1997. *See id.* at 379, 427. He was self-employed in the years 1998 through 2001 and also worked as a telemarketer for Telephone Centre Inc. in the year 2000. *See id.* at 378-80, 427. Plaintiff had no reported income for the years 2002 through 2003 although the submitted disability report indicates that he worked as a delivery person for a flower shop. *See id.* at 378, 427. Plaintiff's last employment was as a bill collector at a medical office, Sports Medicine and Orthopaedic Rehabilitation, P.C., from 2004 until the alleged onset of disability on July 30, 2009. *See id.* at 380-82, 427.

Previously, Plaintiff filed two, unsuccessful workers' compensation claims related to the disabling injuries alleged in this case. *See id.* at 386-87, 398-419. Plaintiff's first workers' compensation injury occurred on October 2, 2007 when he claims that his knees buckled while he was going up stairs. *See id.* at 403. He testified in the workers' compensation hearing that he believes that the genesis of his injuries were related to a fall in 2005 where he fractured his hand and wrist. *See id.* Plaintiff's second workers' compensation claim related to injuries he sustained when drywall material fell from a ceiling and hit Plaintiff in the head on July 30, 2009. *See id.* at 398. Plaintiff claims that, as a result of that incident, he sustain headaches and vision problems followed by damage to his neck and back. *See id.* at 398-99. Plaintiff has not been employed since that incident. *See id.* at 421-23.

On December 23, 2009, Plaintiff protectively filed applications for DIB and SSI claiming a period of disability that started on July 30, 2009.[1] *See id.* at 363-71. Plaintiff claimed that his bilateral knee injury, spinal injury, elbow nerve damage, and left-hand injury prevented him from being able to work. *See id.* at 425. These applications were both initially denied on April 5, 2010. *See id.* at 180-81, 206-11. Plaintiff filed a written request for a hearing on April 15, 2010, and the claim was assigned to Administrative Law Judge Edward I. Pitts (the "ALJ"). *See id.* at 253, 234-38. A hearing was held on December 28, 2010, *see id.* at 118-72, and the ALJ issued a decision dated February 22, 2011, finding that Plaintiff was not disabled. *See id.* at 181-200. Plaintiff timely requested review, and the Appeals Council remanded the claim back to the ALJ for further action. *See id.* at 201-05. On remand, the ALJ was directed to do the following: (1) evaluate Plaintiff' obesity, (2) obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's physical impairments, (3) further consider Plaintiff's maximum residual functional capacity ("RFC") – including evaluation of treating source opinions, and (4) obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base and to determine if Plaintiff has acquired any transferable skills. *See id.* at 202-05.

On remand, the ALJ held hearings on February 6, 2012 and July 5, 2012. *See id.* at 36-117. At the hearings, the ALJ arranged for a non-treating medical expert, Dr. Joseph Jensen, and a vocational expert, Joe Pearson, to testify. *See id.* at 36-117. The ALJ issued a decision on August 9, 2012 finding again that Plaintiff was not disabled and denying Plaintiff's applications

---

[1] Plaintiff actually listed March 19, 2008 as the date of disability on his application for SSI. There is no explanation for the use of a different date on the SSI application and the discrepancy is not resolved by the ALJ. However, Plaintiff does not ever object to the July 30, 2009 date of disability that he stated on his application for DIB, and this date is consistent with the date of disabling injury repeated throughout the administrative transcript.

3

for DIB and SSI.  *See id.* at 13-26.  Request for review by the Appeals Council was timely filed, and, on November 27, 2013, the request was denied, rendering the ALJ's decision the Commissioner's final decision.  *See id.* at 1-7.

In his decision, the ALJ found the following: (1) Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014; (2) Plaintiff has not engaged in substantial gainful activity since July 30, 2009; (3) Plaintiff's degenerative joint disease of his bilateral knees, degenerative disc disease of his lumbar spine, mild degenerative disc disease of the cervical spine, and obesity were severe impairments; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments; (5) Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with additional specific limitations and modifications; (6) Plaintiff's RFC renders him capable of performing past relevant work as a collections clerk; and, based upon these findings, (7) Plaintiff has not been under a disability, as defined in the Social Security Act, from July 30, 2009 through August 9, 2012, the date of the ALJ's decision.  *See id.* at 13-26.       Plaintiff commenced this action for judicial review of the denial of his claims by the filing of a complaint on January 7, 2014.  *See* Dkt. No. 1.  Both parties have moved for judgment on the pleadings.  *See* Dkt. Nos. 13, 15.  Having review the administrative transcript, the Court orders that the Commissioner's decision is reversed and remanded for further consideration.

### III. DISCUSSION

**A. Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3);

4

*Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). The Court must examine the administrative transcript to determine whether the correct legal standards were applied and whether the decision is supported by substantial evidence. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotations omitted).

If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and it is not permitted for the courts to substitute their analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Analysis**

*1. Five-step analysis*

For purposes of both DIB and SSI, a person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

5

for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

There is a five-step analysis for evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citations omitted). The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step. *Id.*

### 2. Severe Impairments

Step two of the five-step sequential evaluation for determining whether a claimant is disabled, requires that a claimant must suffer from a severe impairment in order to be found disabled under the Social Security Act. *See* 20 C.F.R. §§ 404.1520(c); 416.920(c). A severe impairment is one that "significantly limits your physical or mental ability to do basic work activities." *See id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-141 (1987). The phrase "basic work activities" are "the abilities and aptitudes necessary to do most jobs" and include

> [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling... seeing, hearing,

6

> and speaking . . . [u]nderstanding, carrying out, and remembering
> simple instructions . . . [u]se of judgment . . . [r]esponding
> appropriately to supervision, co-workers and usual work situations .
> . . [d]ealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b); *see Bowen*, 482 U.S. at 141.

The purpose of the severity regulation was to create a "threshold determination of the claimant's ability to perform basic, generically defined work functions, without at this stage engaging in the rather more burdensome medical-vocational analysis required by [42 U.S.C.] § 423(d)(2)(A)." *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995). In order to find a medically determined condition to be severe, the ALJ must base his or her finding on medical evidence that establishes more than a slight abnormality which would have more than a minimal effect on an individual's ability to work. *See* SSR 85-28, 1985 WL 56856, *3 (1985).

Plaintiff contends that the ALJ erred when he did not include tenderness and deficits of the left wrist, tenderness and pain of the elbow, and dizziness among his severe impairments at step two of the disability analysis. *See* Dkt. No. 13 at 7-8. The Court finds that there is substantial evidence to support the ALJ's determination that the alleged impairments of Plaintiff's wrist and elbow and Plaintiff's dizziness did not meet the severity threshold.

Plaintiff submits that the administrative record supports a finding of severe wrist impairment based upon his medical records from New York Orthopaedic Surgery & Rehabilitation. *See* Dkt. No. 13 at 9-10. Plaintiff directs the Court to medical records documenting treatment from January 17, 2007 through March 5, 2009, which all occurred before the Plaintiff's claimed disability onset date of July 30, 2009. *See* T. at 600-24. The Court finds medical evidence to indicate that Plaintiff sustained a stabbing injury to his wrist/forearm area in the 1960s, which caused ulnar nerve injury. *See id.* at 1168, 1171, 1188. Abnormal nerve

conduction was objectively documented in a nerve conduction study performed on June 21, 2005. *See id.* at 1176. Further, the Court also notes that Plaintiff sustained a left wrist injury as the result of a fall on April 18, 2005. *See id.* at 600. However, the Court concludes that there was substantial evidence to support the ALJ's determination that Plaintiff's wrist pain was not a severe impairment.

The ALJ specifically stated that Plaintiff maintained substantial gainful activity throughout the same period of time of the medical evidence documenting Plaintiff's complaints of wrist pain. *See id.* at 18. Further, the ALJ relied upon Plaintiff's medical records during the disability period, including a September 5, 2010 examination, which documents that Plaintiff's left wrist had a "[f]ull range of motion without tenderness." *See id.* at 18, 648. In addition, the Court's review of Plaintiff's medical evidence reveals the following: (1) Plaintiff's complaints to orthopedic surgeon, Emmanuel Hostin, MD, from October 16, 2008 through August 26, 2010 did not include any mention of Plaintiff's wrist pain or injury, *see id.* at 562-69, 754-62, 770-87; (2) Plaintiff's RFC assessment, dated April 2, 2010, documents that Plaintiff had no manipulative limitations for reaching, handling, fingering, or feeling, *see id.* at 585-90; (3) the March 4, 2010 through April 8, 2010 records from Dr. Lawrence Wiesner, D.O., a treating orthopedic surgeon, are devoid of any complaints regarding Plaintiff's left wrist, *see id.* at 651-55; (4) Plaintiff's complaint of pain to his primary care provider, Harry Werner, D.O., on September 3, 2010, listed pain in his knees, head, neck, and back, *see id.* at 660, and the remaining records from February 15, 2010 through November 18, 2010 and from August 2, 2011 through September 1, 2011 are also devoid of pain or injury to his left wrist, *see id.* at 656-82; (5) Plaintiff's treatment records from Lourdes Family Practice Clinic from September 20, 2010 through November 29, 2010 do not contain any documented complaints of wrist pain, *see id.* at 715-34; (6) Plaintiff's treatment

records from treating orthopedic surgeon, David Adin, D.O., for the periods from July 30, 2009 through January 22, 2010, March 16, 2011 through December 16, 2011, and April 16, 2012 through July 9, 2012 do not contain any complaints of pain or injury to his wrist, *see id.* at 763-69; (7) Plaintiff's orthopedic treatment from the United Medical Associates from March 4, 2010 through February 13, 2012 does not indicate or document any complaint of pain to his left wrist, *see id.* at 1033-41; and (8) during a physical examination on April 25, 2013 at Lourdes Family Practice Clinic, the physician noted that Plaintiff has muscle loss on his left forearm but that he has no specific sensory losses and his deep tendon reflexes are within normal limits. *See id.* at 1188.

Plaintiff next submits that the ALJ erred in his determination that the tenderness and pain of his right elbow are not severe impairments. *See* Dkt. No. 13 at 10. Plaintiff identifies that an MRI showed synovial effusion and spurring along the lateral side of his distal humerus, and plaintiff directs the Court's attention to records with notations of tenderness, weakness, and an acute bony injury. *See id.* The ALJ relied upon the hearing testimony from Dr. Joseph Jensen, M.D., an independent medical examiner, that there was no medical evidence of a residual problems that related to Plaintiff's right elbow injury that in his opinion qualified as a severe impairment as that term is defined in the Social Security regulations. *See* T. at 17. The ALJ also noted an x-ray report that stated there was evidence of minimal osteoarthritic changes. *See id.*

The medical evidence indicates that Plaintiff initially sustained an injury to his right elbow on or about April 21, 2011 as a result from a fall in his home. *See id.* at 842, 999. He presented to the emergency department at Lourdes Hospital that same evening. *See id.* at 999. The x-ray report findings ruled out acute fracture, dislocation, and joint effusion but, under impression, the report states that there is evidence of acute bony injury and minimal change of osteoarthritis. *See*

9

*id.* at 1006. Plaintiff followed up with his primary care provider on April 28, 2011. *See id.* at 844. On examination, the provider did not find any swelling, ulceration, or blue discoloration. *See id.* When Plaintiff returned to the same primary medical provider on June 8, 2011, he did not report any further symptoms, and, on examination, the provider did not see any swelling, ulceration, or blue discoloration on Plaintiff's extremities. *See id.* at 837-41. At an emergency room visit on October 9, 2011, Plaintiff was making comprehensive complaints of pain, but there is no complaint of pain in his elbow and the examination indicates that his upper extremities were negative for any findings. *See id.* at 874-78.

Plaintiff's subsequent medical treatment, as documented in the medical records, does not reflect that Plaintiff complained again about elbow pain or tenderness. To the contrary, the later primary care records indicate specifically that his right elbow is examined on January 18, 2012, January 20, 2012, and April 3, 2012, and there is no joint deformity, heat, swelling, or effusion. *See id.* at 1014, 1020, 1045, 1055. It is also documented at each of these visits that Plaintiff had a full range of motion of his right elbow. *See id.* Dr. Adin, Plaintiff's treating orthopedic surgeon, notes that Plaintiff has symmetric strength in both upper extremities on June 15, 2012 and July 9, 2012. *See id.* at 1090, 1092. After a careful review of Plaintiff's medical evidence, there is no support for Plaintiff's contention that the pain and tenderness of his right elbow is a severe impairment. There is, however, substantial evidence to support the ALJ's determination that the right elbow condition is not a severe impairment.

Plaintiff also directs the Court's attention to his complaints of dizziness and contends that the ALJ erred in his determination that these complaints of dizziness are not a severe impairment. *See* Dkt. No. 13 at 10. Plaintiff identifies four dates of treatment where Plaintiff made complaints of dizziness, August 10, 2009, August 12, 2009, June 8, 2011, and March 28, 2013. *See id.* at

10

547-48, 837, 1187. On the first two dates in August 2009, Plaintiff stated to the physical therapist that he was unable to complete his exercises because he felt dizzy. *See id.* at 547-48. However, the physical therapy records of August 19, 2009 through November 2, 2009 indicated that Plaintiff's tolerance to treatment was good and did not mention any further complaints of dizziness. *See id.* at 544-52.

Almost two years later on June 8, 2011, Plaintiff complained to his primary medical provider that five days earlier he had an onset of dizziness, described as feeling light-headed. *See id.* at 837. Upon review of the medical evidence, the Court did not identify any further complaints until March 28, 2013 when Plaintiff reported "occasional issues with dizziness." *See id.* at 1187. In that interim between June 8, 2011 and March 28, 2013, physical examinations were performed on January 18, 2012, January 20, 2012, and April 3, 2012, and the medical providers recorded that Plaintiff's balance and gait were intact. *See id.* at 1021, 1045, 1055. On April 25, 2013, Plaintiff reported a long medical history including past symptoms of dizziness. *See id.* at 1186. However, there is no mention of dizziness as part of the current problems or symptoms that he was experiencing at that time. *See id.* at 1188-89. Upon review of the evidence identified by Plaintiff and the Court's own review of the medical records, there is substantial evidence to support the ALJ's determination that Plaintiff's dizziness was not a severe impairment.

### *3. Medical Adviser's Opinion*

Plaintiff submits that the ALJ committed two legal errors that both relate to the opinion testimony of Dr. Joseph Jensen, a non-treating medical adviser who is a board-certified orthopedic surgeon. *See* Dkt. No. 13 at 10-15. According to Plaintiff, the ALJ's first error was assigning Dr. Jensen's medical opinion the greatest weight, over the opinions of Plaintiff's treating

11

physicians, and the second error was allowing Dr. Jensen to testify by telephone. *See id.* The Court does not find that it was an error of law to accord the greatest weight to Dr. Jensen's opinion, but agrees with Plaintiff's alternative argument that this determination is not supported by substantial evidence. *See* Dkt. No. 13 at 13. The Court also finds that it was an error of law to allow Dr. Jensen to testify by telephone. For the reasons below, each of these issues independently are grounds to remand this case to the Commissioner for further proceedings.

The Social Security Administration ("SSA") regulations provide a framework for how to evaluate the opinions of non-examining medical sources, such as consultants or advisers. *See* 20 C.F.R. §§ 404.1527(e); 416.927(e). The ALJ is required to explain in the decision the weight assigned to the opinions of program physicians unless a treating source's opinion is given controlling weight. *See* 20 C.F.R. §§ 404.1527(e)(2)(ii); 416.927(e)(2)(ii). Factors in the evaluation include consistency of the opinion with the record as a whole, "the consultant's medical specialty and expertise in [the SSA] rules, the supporting evidence in the case record, supporting explanations the medical [] consultant provides, and any other factors relevant to the weighting of the opinions." *Id.* It is the general rule that a medical adviser's opinions "deserve little weight in the overall evaluation of disability," because "[t]he advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." *Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990). "When the treating source has reasonable knowledge of your impairment(s), [the Commissioner] will give the source's opinion more weight than [the Commissioner] would give it if it were from a nontreating source." 20 C.F.R. §§ 404.1527(c)(2)(ii); 416.927(c)(2)(ii).

In the present case, the ALJ's determination to accord the "greatest amount of weight among the medical opinions" to Dr. Jensen is not supported by the substantial evidence. First, the

12

ALJ states that he adopted Dr. Jensen's testimonial opinion because Dr. Jensen had an opportunity to review the majority of the records. *See* T. at 20. However, Dr. Jensen testified that he had received and reviewed Plaintiff's exhibits up to 34F as well as medical records about Plaintiff's kidney stones. *See id.* Additional medical evidence was received after exhibit 34F, namely exhibits 35F through 62F, which encompasses Plaintiff's treatment records from July 2011 through at least 2012. *See id.* at 867-1201. These additional exhibits include treatment records from Dr. Adin, radiology reports, an addendum to a medical source statement, and surgical records, among other medical treatment records. The ALJ's reliance upon Dr. Jensen because he reviewed most of the medical records is misplace. The hearing transcript demonstrate that Dr. Jensen did not review a significant portion of Plaintiff's medical evidence. *See id.* at 85.

The ALJ accurately states Dr. Jensen's qualifications as a board-certified orthopedic surgeon and his knowledge of the disability program. *See id.* at 21. Although the ALJ states that the objective medical evidence in the record supports Dr. Jensen's opinion, the decision is devoid of this medical support. *See id.* at 21-25. The majority of the ALJ's decision discounts the medical opinions of Plaintiff's treating physicians solely based upon their inconsistencies with Dr. Jensen's opinions. *See id.* Upon review of the administrative transcript, the Court finds that the ALJ's determination to give the greatest weight to the opinions of Dr. Jensen, a non-examining adviser, was not supported by substantial evidence.[2]

---

[2] It should also be noted on remand that the ALJ's decision contains other errors of law. It is improper for the ALJ to substitute his or her own opinion for that of competent medical evidence. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The ALJ improperly substituted his own judgment in place of competent medical opinion when discounting Dr. Adin's opinion. *See* T. at 21. The ALJ notes the abnormal results from Plaintiff's objective testing but then concludes that the abnormal findings "do not justify extreme functional limits." *See id.* at 21. The ALJ makes this conclusion based upon his own judgment and not based upon any medical evidence.

Further, it is an improper characterization that Plaintiff was undergoing conservative

13

At the time of the hearing, Plaintiff objected to Dr. Jensen's appearance by telephone. *See id.* at 84. The ALJ overruled the objection and proceeded with the medical adviser's testimony. *See id.* Dr. Jensen's testimony included an evaluation of Plaintiff's RFC based upon his review of medical records and the testimony from the February 6, 2012 hearing. *See id.* Dr. Jensen opined that Plaintiff had the functional capacity to: (1) lift and carry ten pounds occasionally or frequently; (2) sit for six hours in an eight hour work day with the opportunity to change position every sixty minutes; (3) occasionally use stairs and ramps but not ladders or unprotected heights; (4) occasionally stoop or crouch but no kneeling; (5) occasionally perform pedal operation with either foot; (6) frequently use his upper extremities for gross and fine motor manipulation; and (7) frequently reach but only occasionally reach at or above shoulder level. *See id.* The ALJ adopted all of Dr. Jensen's findings and the recommended RFC. *See id.* at 20.

Plaintiff argues that it was an error of law to permit Dr. Jensen to testify at Plaintiff's February 6, 2012 hearing by telephone. *See* Dkt. No. 13 at 14-15. The Court agrees that, at the time of Plaintiff's hearing, it was a legal error to permit a medical expert or adviser to appear at a hearing by telephone. The SSA regulations, in February of 2012, did not authorize the use of telephonic testimony. *See* 20 C.F.R. §§ 404.936; 416.1436 (2010) (amended 2013) (current version 2015). This Court and other district courts have addressed this issue of medical experts' testimony by telephone and have determined that it is an error of law to allow such testimony over an objection. *See Koutrakos v. Astrue*, 906 F. Supp. 2d 30, 34-35 (D. Conn. 2012); *Edwards v. Astrue*, No. 3:10cv1017, 2011 WL 3490024, *7-8 (D. Conn. Aug. 10, 2011) (collecting cases

---

therapy when the ALJ was on notice that Plaintiff's state workers' compensation claims for medical treatment were denied for lack of causation to the work incidents. *See id.* at 21-22, 72, 113, 386-874, 398-406, 411-19.

14

that find the inclusion of such telephonic evidence to be a legal error); *Palaschak v. Astrue*, No. 08-CV-1172, 2009 WL 6315324, *9 (N.D.N.Y. Nov. 13, 2009) (*adopted by* 2010 WL 1257895 (N.D.N.Y. Mar. 26, 2010).

It is conceded by Defendant that, prior to June 30, 2013, the SSA regulations did not permit testimony by telephone, *see* Dkt. No. 14 at 22, but Defendant argues that the Hearing and Appeals Litigation Law Manual (HALLEX) provides authority for a medical expert's testimony at a hearing by telephone. *See id.* This argument has been specifically made and rejected by this Court. *See Palaschak*, No. 2009 WL 6315324, at *9. When there is a conflict between the SSA regulations and the HALLEX manual, the regulations control. *See id.*

Defendant also argues that any legal error on this issue is subject to a harmless error analysis. *See* Dkt. No. 14 at 22. The Court agrees that permitting telephonic testimony of an expert can be harmless error, *see*, *e.g.*, *Palaskchak*, 2010 WL 1257895, at *5, but, however, it cannot be classified as harmless in this case. The ALJ is clear in his decision that he completely adopted Dr. Jensen's medical opinions and relied upon those opinions in determining Plaintiff's credibility and RFC, among other things. *See* T. at 20. Dr. Jensen opinions were based upon the medical records that were provided to him as well as the hearing testimony on February 6, 2012. *See id.* at 85-86. Dr. Jensen testified that "I *see* [Plaintiff] is not using a cane today" and, later in the hearing, Dr. Jensen volunteered the following, "Your honor, if I may make one point. [Plaintiff] coming in today to the hearing without a cane I think is a pretty definite indication that there's not significant inability to ambulate here." *See id.* at 91, 111 (emphasis added). Where, as here, the medical expert testified by telephone but partially relied upon a plaintiff's physical appearance at the hearing as a basis for an opinion, this Court finds that the error is reversible.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: September 10, 2015
Albany, New York

Mae A. D'Agostino
U.S. District Judge